WILLIAM J. COLE,
vs.                    }  JULY TERM, 1851.
DANIEL O'NEILL ET AL.

[MARITAL RIGHTS OF A HUSBAND.]

OFFICIAL copies of deeds taken from the records, are *prima facie* evidence of everything necessary to the validity of the instruments.

A voluntary conveyance by a woman in contemplation of marriage, is avoidable by the husband, from whom it was concealed, or who had no notice of it, as in derogation of his marital rights, and a fraud upon his just expectations.

But it is indispensably necessary to the successful impeachment of such a deed, that the husband should be kept in ignorance of it, up to the moment of the marriage, and even if he be so kept in ignorance, it will depend upon circumstances whether it be valid or not; the question in all such cases is whether the evidence is sufficient to raise fraud.

If it appears that the conveyance was made during the treaty and in contemplation of marriage, and it does not appear that it was made known to the intended husband, either expressly or by construction of law, he will be presumed to have been ignorant of it, and the *onus* is upon the party claiming under the deed to show affirmatively that he had notice.

It is the settled American doctrine that the registration of a conveyance operates as constructive notice upon all subsequent purchasers of any estate legal or equitable in the same property, and it is not easy to suggest a good reason why this doctrine should not apply to the intended husband.

Property was settled upon a wife by her first husband for her separate use, free from any control of her husband, with the power of absolute disposition by deed or will.   HELD—that this settlement was operative as against the marital right of a second husband.

The protection which Chancery gives to the separate estate of a married woman, with its qualifications and restrictions, attaches to it throughout a subsequent coverture, the principle being that a person marrying a woman so circumstanced is considered as adopting it in the state in which he finds it, and bound in equity not to disturb it.

Where a portion of the property in dispute was equitable, and the plaintiff's title could not, therefore, be asserted in a court of law, and the number of tenants great, and endless litigation might and probably would ensue at law, the jurisdiction of equity may be maintained.

In a case where the plaintiff shows equitable title to a part of the property in dispute, and a legal and equitable title to the rest, it being decided that the defendant has no title legal or equitable, and where preservation of the property requires it, a receiver will be appointed.

[On the 4th December, 1850, the complainant filed his bill of complaint in this case, against the defendant O'Neill and others, stating in substance, that by deed dated 17th April, 1843, Catharine Drake conveyed to complainant certain real estate in that deed described, and all other her property in trust for her use during her life, with absolute power in any manner, and free from the control of any future husband, to dispose of said property, and in the event of a failure on her part to exercise said power, then for the use of complainant and his heirs. That by deed dated 27th February, 1843, the said Catharine Drake had mortgaged parcel of the property conveyed in trust as aforesaid, to the complainant to secure payment of the sum of $448 71, with interest due from her to him, which debt remains unpaid. That after the execution and enrolment of said deed of trust, the said Catharine Drake intermarried with the said O'Neill, and afterwards on the 28th August, 1850, departed this life without having made any disposition of said trust property, save only of a parcel which she conveyed to Margaret Ann O'Neill, by deed dated 12th April, 1848. In consequence whereof the complainant became entitled absolutely to the property conveyed to him as aforesaid.

That said real property, or the greater part thereof, including the parcel mortgaged as aforesaid, consists of property described in deeds, of which his exhibits are copies. That at the time of the death of the said Catharine, the said trust property was, and at this time is, in the occupation of tenants paying rents, who have received notice of the complainant's claim with regard to the said premises, and have been required to pay the rents thereof to him. But that the defendant O'Neill pretending to act at times for the next of kin and heirs-at-law of the said Catharine, and at other times in his own right, has interfered with said tenants, so that they refuse to pay their rents to the complainant, and complainant is thereby aggrieved and unable out of said rents to pay ground-rents and taxes chargeable on said property, and to repair the buildings thereon.

The bill is filed against O'Neill, the surviving husband, Henry Lechler and Elizabeth Fleming, as heirs-at-law of the

deceased, Catharine Drake, and certain others, who are charged as tenants coming in under the said Catharine.. And it prays that the title of the complainant to said premises may be quieted, and that the rents accruing thereon may be decreed to be paid to him, and for general relief. It prays also for an injunction to prevent the said O'Neill, Lechler, and Fleming, from intermeddling with said rents, and that a receiver may be appointed, to collect and apply the same under direction of the Court.

The deed from Catharine Drake to complainant, professes to convey the grantor's interest in the property, which had been conveyed by William Drake, her former husband, to James Mowatt, by deed dated 3d January, 1825, and by William Krebs to James Mowatt, by deed dated 2d February, 1825, and by Feinour and Drake to complainant, by deed dated 17th December, 1839, and all other the property, estate, and effects of the said Catharine Drake, and the trusts are as stated in the bill.

The deed from William Drake to James Mowatt, conveys three parcels of leasehold to the grantee, in trust, "for the sole and exclusive use and benefit of Catharine Drake, wife of the said William Drake, her executors, administrators, and assigns, free, clear, and discharged of any control of her husband, with full and complete power and authority to her, to convey, transfer, and dispose of the same, by indenture of assignment, under her hand and seal, and by last will and testament."

The deed from Krebs to Mowatt, conveys a lot to Mowatt in fee, in trust "for the sole and exclusive use and benefit of the said Catharine Drake, and her heirs, and with full power to her to sell and convey the same by deed or devise the same by last will."

The deed from Peters to complainant, conveys leasehold in trust "for the sole and exclusive use and benefit of the said Catharine Drake, and that free, clear, and discharged from the claims of any husband, which the said Catharine may here-

after have, and without being liable for his debts, and with power to her to sell and dispose of the same."

The answer of Daniel O'Neill denies all knowledge of the execution of the deed from Catharine Drake to the complainant, and avers that he never heard of it until after her death. It avers that two months prior to the date of the said deed, the said Catharine and defendant became engaged to be married to each other, and that pursuant to the said engagement, on the 14th May, 1843, they were married, and that they lived together as man and wife, thenceforth until the death of the said Catharine, which took place on the 28th August, 1850. It insists that said deed, if executed at all, was so executed in fraud of the marital rights of defendant, and is therefore void, and defendant therefore claims to be entitled to all the leasehold, settled in trust for his said wife as before stated, and to the rents and profits thereof.

The answers of the defendants, Lechler and Fleming, likewise deny all knowledge of the execution of the deed from Catharine Drake to complainant, and insist it was made, if made at all, in fraud of the marital rights of O'Neill, and is therefore void.

An injunction was granted on the filing of the bill. After coming in of the answers, the defendants moved for a dissolution of the injunction, and the complainant moved for the appointment of a receiver. The motions were heard together. The Chancellor passed an order continuing the injunction until final hearing, and on the 28th July, another order was passed, appointing a receiver as prayed. Accompanying the first order, he delivered the following opinion.]

THE CHANCELLOR:

This case has been brought before the Court at this term; and has been argued upon motions to dissolve the injunction which was granted when the bill was filed, and for the appointment of a receiver, which was also asked for in the bill but held over for the coming in of the answer, or until further order.

The defence taken in the answer of O'Neill, the surviving husband of the late Catharine O'Neill (formerly Catharine Drake), and of the defendants Henry Lechler and Elizabeth Fleming her brother and sister and heirs-at-law, that the deed to the complainant of the 17th of April, 1843, was a fraud upon the marital rights of O'Neill, can, if well taken, only avail the surviving husband, it being clear that if a fraud at all, it is a fraud only upon him and to be complained of only by him.    And hence it follows, that if the deed is not to prevail as against the heirs-at-law, it must be upon some other ground.

The defendants do not admit the execution of this particular deed, but they do admit that the complainants' exhibits (the deed in question being one of them) are office copies as they purport to be; and it appears to me quite impossible to deny that these copies from the record are at least *prima facie* evidence of everything necessary to the validity of the instrument.

In the answer of O'Neill it is said that the grantor could neither read or write manuscript, and from this statement, which, from the fact that her mark is made to the paper appears to be true, and from the supposed want of motive for its execution, an attempt is made to establish fraud in fact, or some unfair dealing in procuring it.    The attempt, however, in my opinion is entirely unsuccessful.    Fraud certainly is not to be presumed; and any inference unfavorable to the deed which might be deduced from the circumstance that the grantor could neither read or write, is repelled by the certificate of the magistrates before whom her acknowledgment was made that the contents of the deed were fully explained by them to the grantor at the time.

It seems to me, therefore, quite clear that so far as the heirs-at-law are concerned, the deed in dispute is free from objection.

The case of the surviving husband, who insists that the deed is a fraud upon his marital rights with respect to the leasehold property conveyed by it upon which those rights by the marriage are supposed to have fastened, is thought to be different.

It may perhaps be regarded as an established principle of this Court, that a voluntary conveyance by a woman in contemplation of marriage is avoidable by the husband from whom it was concealed or who had no notice of it, as in derogation of his marital rights and a fraud upon his just expectations; though, as was said by the Lord Chancellor in *St. George* vs. *Wake*, 1 *Mylne & Keene*, 610, the principle rests rather upon a uniform current of *dicta*, than upon adjudged cases. In truth it was affirmed in that case, in which all the previous decisions were reviewed, that the case of *Goddard* vs. *Snow*, 1 *Russ.*, 485, was the only case in which a conveyance by the wife, though without consideration, was set aside simply because made during a treaty of marriage and without the knowledge of the intended husband.

As moreover everything depends upon the fraud supposed to be practiced upon the husband, it is indispensably necessary to the successful impeachment of the settlement that he should be kept in ignorance of it up to the moment of the marriage; and even if he is so kept in ignorance, it will depend upon circumstances whether it be valid or not. 1 *Mylne & Keene*, 610; 2 *Kent's Com.*, 174; *The Countess of Strathmore* vs. *Bowes*, 1 *Ves. Jr.*, 22. In this last case, Lord Thurlow said, "A conveyance by the wife, whatsoever may be the circumstances and even the moment before the marriage, is *prima facie* good, and becomes bad only upon the imputation of fraud;" and in that case he refused to set aside the conveyance, though the husband did not know of it. The question, he said, which arises in all these cases is, whether the evidence is sufficient to raise fraud?

There was some discussion in the course of the argument of this case with respect to the party upon whom the *onus* of proof of notice rested. It being contended on the one side, that the husband must show that he had no notice; and on the other, that the party claiming under deed must show affirmatively that he had notice. It appears to me that it would be unreasonable, and contrary to analogies, to require this negative proof of the husband. Indeed, I do not well see

how he could furnish the evidence, and, therefore, I think that if it appears that the conveyance was made during the treaty and in contemplation of marriage—and it does not appear that it was made known to the intended husband, either expressly or by construction of law—that he will be assumed to have been ignorant of it, and that all the consequences of such ignorance will attach to the transaction.

The deed in this case was executed and acknowledged on the 17th of April, 1843, and recorded on the 19th—two days thereafter; and the marriage took place on the 14th of May following. Now the promptness with which it was put upon the public record certainly does not indicate a desire to keep it a secret from the husband or from any one else, and I think it may be well doubted whether the registration of the conveyance shall not be regarded as constructive notice to the husband. It is as Mr. Justice Story says, the settled American doctrine, "That the registration of a conveyance operates as constructive notice upon all subsequent purchasers of any estate, legal or equitable in the same property." 1 *Story's Eq.*, sec. 403. And if subsequent purchasers are by such registration affected with notice upon the ground that it is their duty to search for prior incumbrances, the means of which search are within their power, it is not easy to suggest a good reason why the intended husband, if he wishes to inform himself of the situation of the property of his intended wife and see that nothing has been done to interfere with his marital rights, should not be required to be equally vigilant. The equity of the husband is certainly not stronger than the equity of a *bona fide* purchaser without actual notice; and if the latter is affected with constructive notice by the registration of the deed, it would seem the former should be also.

But without meaning to decide at this time that a husband will not be allowed to assert his marital rights with respect to property conveyed away by his intended wife in contemplation of marriage and without notice to him, except such notice as is inferred from the fact of registration, another view may

be taken of this deed, which seems to me to relieve it from any well-founded objection.

If with reference to the property contained in this deed, the marital right of the husband did not attach, and would not have attached even if it had not been executed, it follows necessarily that it can be no fraud upon that right.

A portion of the property conveyed by the deed of the 17th of April, 1843, to the complainant, had been conveyed by deed bearing date the 3d of January, 1825, by William Drake, the first husband of Catharine O'Neill, to one James Mowatt, in trust " for the sole and exclusive use and benefit of the said Catharine, wife of the said William Drake, her executors, administrators, and assigns, for ever, free, clear, and discharged from any control of her husband, and with full and complete power and authority to the said Catharine to convey, &c., the same by indenture and assignment under her hand and seal, or by her last will and testament."

It is absolutely certain, and has not been disputed, that by this settlement of William Drake for the use of his then wife, his own marital rights were extinguished, and that, with reference to the property thereby conveyed, she was to be regarded as a *feme sole*. But it is said that though the deed operated to suspend or destroy the rights of Drake, her then husband, it becomes inoperative after his death, and can have no influence upon the marital rights of a subsequent husband. If this shall turn out to be the legal effect of this deed, there is assuredly strong grounds for believing that it is an effect not within the contemplation of the party who made it, for can it with any degree of plausibility be contended, that William Drake, the maker of that deed, meant to settle property on his wife, free from his control, and yet subject it to the control and disposition of any person she might marry after his death?

Two cases are cited in support of the proposition, that the trust for the separate use of the wife was confined to the first marriage. They are reported in 6 *Simons*, 121 and 126; the first, the case of *Knight* vs. *Knight*, the other that of *Benson* vs. *Benson*, and it will be found, upon an examination of them,

that the Vice-Chancellor, by whom they were decided, rested his judgment upon the ground of intention, as shown by the terms of the deed, and not upon any general principle which can fairly apply to this case. In the case of *Knight* vs. *Knight*, the settlement, after creating a trust for the sole and separate use of the intended wife, notwithstanding her coverture, proceeds to declare that " the said income, interest, dividends, and annual produce, shall not be subject to the power, control, debts, intermeddling, or engagements of the said Robert Giveen, her intended husband," and this clause, the Vice-Chancellor said, manifestly alluded to the then intended coverture, the *name* of the person whom she was about to marry being given, and against whose interference with the property embraced in the settlement the instrument provided.

In the case of *Benson* vs. *Benson*, the trust was created by the will of the father, for the sole and separate use of his daughter, then a married woman, and the words used were, " for the sole, separate, and exclusive use and benefit of my daughter, Jane Abel Lane, the wife of John Branford Lane, Esquire, for, and during her natural life," and " free and independent of the debts, control, or engagements of her husband." Lane, the then husband, died, and his widow married again ; and it was decided by the Vice-Chancellor, that the trust for the separate use of the wife, ceased upon the death of her first husband, being of opinion "that according to the plain sense of the words of the will, her husband, J. B. Lane, and no other was meant."

In both these cases it will be seen, that the husbands against whose control of the trust property, provision was made, are named specially, and there is nothing to show that any future husband was within the contemplation of the parties.

They differ from the case now under consideration, in this very material fact, that the settler here was himself the then husband of the lady, and whilst guarding the property against himself, it is highly improbable he intended to expose it to the control of any future husband she might have.

This case, and the cases relied upon, differ also in another

very essential feature. In them, the wife was merely entitled to the profits of the estate for life, having no *jus disponendi* over the property, from whence the profits proceeded, except that in the case of *Knight vs. Knight*, the settlement, in a certain contingency, reserved to the lady the power of disposing of the property by will, which by her then intended husband she was authorized to make.

But in this case, the deed of William Drake not only settles the property for the sole and separate use of his wife, but gives her the absolute and uncontrolled power of disposing of it by deed, or by her last will and testament; and we must therefore not only assume that Drake meant the trust should terminate with his life, and that every future husband might take the rents and profits to his own use, but that he also meant, in case she should survive him and marry again, that her *jus disponendi* should be taken from her, and the property being leasehold, that her second husband might also dispose of that. It is, as before said, extremely difficult to believe that Drake intended that such consequences should result from his deed.

But the authority of the cases of *Knight* and *Knight*, and *Benson* and *Benson*, is greatly shaken, if not overthrown by the subsequent cases of *Tullett* vs. *Armstrong*, and *Newlands* vs. *Paynter*, 4 *Mylne & Craig*, 405, and 417, 418, in which it was held by the Lord Chancellor, after (as he says) the most anxious consideration, that the protection which chancery gives to the separate estate of a married woman, with its qualifications and restrictions, extends and attaches to it throughout a subsequent coverture. The principle being, that a person marrying a woman with property so circumstanced, is considered as adopting it in the state in which he finds it, and bound in equity not to disturb it.

In addition to the property included in and conveyed by the deed from Drake to Mowatt, a further parcel of leasehold was conveyed by Christian G. Peters to William J. Cole, by deed dated the 27th of March, 1843, in trust for the sole and exclusive use of Catharine Drake, then a widow, free, clear, and dis-

charged from the claim of any husband she might thereafter have, and without being bound for the payment of his debts, &c., with power to her to receive the rents and profits, without being bound or liable as aforesaid; and in further trust, to permit and suffer her to dispose of the property absolutely at any time she may see fit to do so, which power is expressly reserved to her, as is also the power to devise the same by last will and testament; and upon the further trust that in the event of no such disposition by her in either way, Cole, the trustee, his executors, &c., should hold the property in trust for the heirs of the said Catharine Drake, who would have been entitled to receive the same, had these presents been executed to the said Catharine Drake, her executors, &c.

As this deed expressly protects the property against any husband Mrs. Drake might thereafter have, it is not denied that it applies to the defendant, O'Neill, and that during her coverture with him, the property was subject to the trusts of the deed. This being so, as it unquestionably is, how is it possible to say that the deed from Catharine Drake to Cole, of the 17th of April, 1843, is a fraud upon the marital rights of O'Neill?

By the deed from Peters to her, of March, 1843, the property was settled to her separate use, with the absolute power of disposition by deed or will, and as O'Neill married her with the property so circumstanced, he is to be regarded as adopting it in that state, and bound in equity not to disturb it.

She could then clearly, even during her coverture with O'Neill, have disposed of the trust property, either by deed or will, without his concurrence or knowledge; and surely, if she could do so after the marriage, there can be no principle which would restrain her from executing a similar power prior to the marriage.

How can O'Neill, the husband, say that he had a right to be consulted, or to interpose any objection to the deed to Cole, executed prior to the marriage, when after the marriage, his wife might have disposed of the property entirely irrespective of his consent?

My opinion, therefore, is, that this deed of Catharine Drake to William J. Cole, of the 17th of April, 1843, is a valid deed, both as against the defendant O'Neill, and the heirs-at-law of his wife.

But it is said, that here is a contest about the legal title to certain parcels of property, and that the parties should be referred to the courts of law for its adjudication, and especially that the Court will not, under the circumstances, put in a receiver.

The controversy, however, is not certainly with respect to a portion of the property about the legal title. The title of Catharine Drake to the property conveyed by the deed from William Drake to Mowatt, was an equitable one only, and by her deed to Cole, of the 17th of April, 1843, she conveyed to him, and could convey to him only, that title. Therefore, so far as that property is concerned, Cole, the plaintiff, is but an assignee of the use, and could not assert his title in a court of law. And in view of the great number of tenants, and the endless litigation which might and would probably ensue, if this Court should refuse to take cognizance of the case, the jurisdiction may, in my judgment, be maintained. The injunction, therefore, must be continued, and hence it is indispensably necessary some one should be authorized to receive the rents and profits, as otherwise they would most likely be lost.

The defendants, in their answer, say, they admit they have been in possession of the property by their tenants since the death of Mrs. O'Neill, but the bill does not so allege, and the answers are not evidence of it. This is not a case, therefore, where a receiver is put upon property against the legal title. But it is a case in which the plaintiff shows an equitable title to part of the property, and a legal and equitable title to another part, in which the defendant, upon the case as it now stands, makes out no title, legal or equitable, and in which the preservation of the property requires that it should be taken under the control of the Court. An order, therefore, will be passed, continuing the injunction, and a receiver will be appointed, when a suitable person is named.

The complainant's counsel may prepare an order for the receiver.

CHARLES F. MAYER, for Complainant.
T. P. SCOTT, for Defendants.

[The decree, in this case, was affirmed upon appeal, by the Court of Appeals.]